Filed: 12/3/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H045703 |
| Plaintiff and Respondent | (Santa Clara County Super. Ct. Nos. B1795335, C1779663) |
| v. | |
| CHARLETE LEELU, | |
| Defendant and Appellant. | |

Appellant Charlete Leelu appeals an order committing her to the Department of State Hospitals based on a finding under Penal Code section 1368 et seq. that she was incompetent to stand trial on criminal charges. Although Leelu has subsequently been deemed restored to competency and has returned to the trial court for criminal proceedings, we conclude her appeal is not moot. We further determine that any error the trial court may have made in failing to appoint a second mental health expert to evaluate her competency was not prejudicial in light of the overwhelming evidence that Leelu was not competent to stand trial.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts of Leelu's alleged crimes are not relevant to this appeal. On December 12, 2017, Leelu was charged by complaint with misdemeanor trespass, in violation of

Penal Code section 602, subdivision (m) in docket B1795335.[1] That same day, the trial court granted Leelu's motion to represent herself.

On December 15, 2017, in docket C1779663, Leelu was charged by complaint with stalking, in violation of section 646.9, subdivision (a). On December 28, 2017, Leelu made her first appearance in the case. Leelu told the public defender and the trial court that she wanted to represent herself. Leelu asserted to the court, "I know my rights. I can have jury trial representing myself. [¶] . . . [¶] All psychiatry. And they arrest me so many times in the past couple years, but now I want to be candidate of U.S. senator. We need to change to make a difference, as Donald Trump said." The trial court stated, "I had some experience with Ms. Leelu [in another department]. She is scheduled to be in my department on Tuesday for trial. Based on her behavior here, which included a very aggressive and physical demeanor in terms of speaking to the Court and acting out at the podium, and the way she's addressing the Court and talking about her case, I believe that I have a doubt, and so pursuant to [section] 1368, criminal proceedings are suspended." Leelu stated, "I will let all 32 million people know this judge use police to harass me and my husband and always do things, keeping asking money from me, no jury trial at all. And the police chief right to hire and --."

On January 4, 2018, the trial court suspended proceedings against Leelu in docket B1795335 pursuant to section 1368. That same day, the trial court appointed a doctor to conduct a competency evaluation of Leelu.[2]

Dr. D. Ashley Cohen filed a report with the trial court on February 6, 2018, after having interviewed Leelu. In the report, Dr. Cohen opined that Leelu was exhibiting symptoms of paranoid schizophrenia and was not "able to comprehend the nature of the

---

[1] Unspecified statutory references are to the Penal Code.
[2] The trial court later added docket C1779663 to the order for a competency evaluation. The trial court also appears to have appointed the public defender to represent Leelu in both matters. The record does not contain a reporter's transcript of the January 4, 2018 hearing.

legal proceedings in which she is involved, and her psychiatric symptoms are present to such an extent that they render her incapable of assisting counsel in pursuing a defense in a rational manner." Dr. Cohen stated, "[i]t is believed that [Leelu] has been exhibiting these disordered behaviors and thoughts for a lengthy time, and they have gradually grown worse, in the absence of any therapeutic intervention."

Dr. Cohen opined Leelu "is not rational or coherent in conversation, she cannot express herself such that others can understand her meaning, and she misperceives, or cannot comprehend what others are saying to her. She is confused and misinformed about her legal case, and gets facts intertwined with her delusions." For example, Leelu "insists that her attorney is 'The Senior Minister of the Interior,' from Canada, and he would be defending her except he lost his Canadian driver's license, and must return home to get a replacement." Dr. Cohen observed Leelu "spoke in a rapid, pressured manner. . . . Much of her speech was repetitious, involving favored paranoid themes of individuals, government and religious organizations planning to harm her, the police harassing her, and her ability to discern 'hidden' meanings and messages that escaped the notice of everyone else. She was almost never able to speak in a manner that was rational, coherent, or logical. For example, when asked how she remembers things that may be important to her in the future, she replied, 'I have a diamond ring with an iPad inside it.' " Leelu "strenuously denie[d] any present or past mental health symptoms or treatment."

On February 15, 2018, the parties appeared before the trial court for a determination of competency. Leelu was apparently removed from the courtroom following statements she made to the court and her counsel.[3] The court noted that Dr. Cohen had opined that Leelu was not competent to stand trial. The trial court stated,

---

[3] These statements are not reflected in the reporter's transcript.

3

"either side, of course, can request a second doctor or, if it's submitted on the report of Dr. Cohen, I can refer it to the South Bay Conditional Release Program."

Leelu's attorney stated that she had advised Leelu of Dr. Cohen's opinion which, according to Leelu's attorney, "prompted [Leelu] to address the Court in a loud, angry voice, which can be described as yelling. And her discourse was not linear to the conversation I was having or to any conversation that was happening in court. But as her appointed attorney, I do believe I have to equate that with an objection. But I do think the Court did see evidence before it to make a decision based on Dr. Cohen's report. And I can submit on the report, preserve Ms. Leelu's objection, and waive her right to have [a] jury trial, waive her right to confront and cross-examine her accusers, her right to present evidence in her defense, and submit the issues of competency to the Court."

The prosecutor stated, "the People are also willing to submit." The prosecutor also asked the trial court to instruct Leelu at the next court appearance that she should not contact one of the victims. The trial court replied that it would "make a note." The court said it had "no expectation that [Leelu] will listen or understand," but it would "certainly try."

The court stated "based on the submission, I'll find—and my own observations— I'll find that Ms. Leelu is not competent and she lacks capacity to make independent decisions regarding her medications." The trial court referred the matter to the South Bay Conditional Release Program. On March 2, 2018, the South Bay Conditional Release Program submitted a report to the court stating, "there is significant evidence that suggests [Leelu] is inappropriate for community outpatient treatment to reach trial competency. Currently, Ms. Leelu is so severely decompensated that she would be unable to function and/or cooperate with any outpatient treatment." The report recommended that Leelu be "committed to the Department of State Hospitals for placement in a trial competency program." On March 8, 2018, the trial court conducted a

4

hearing and ordered Leelu committed to the Department of State Hospitals (DSH).[4] Leelu filed in both dockets a timely notice of appeal of the March 8 commitment order.

On July 24, 2019, Leelu's appellate counsel filed a request for judicial notice with this court in which counsel requested we take judicial notice of records that show that Leelu was returned to the superior court from DSH in December 2018, and proceedings related to both cases are currently pending in the trial court.[5]

Leelu argues the trial court erred in the competency hearing when it failed to appoint a second psychiatrist or psychologist pursuant to section 1369, subdivision (a) (hereafter section 1369(a)). Leelu acknowledges that she has completed restoration proceedings but argues this court should not dismiss her appeal as moot for two reasons. First, Leelu contends that her case presents a legal issue of continuing public interest, because the lengthy timeline of an appeal makes it difficult to address any trial court error before the end of a section 1368 commitment. In addition, Leelu argues her case is not moot because she will not receive "good time" credits under section 4019 for time during which she was committed to DSH, and she would have received such credits had she been confined in the county jail. (See §§ 1375.5, 4019.) Finally, Leelu maintains she suffered prejudice because "there is no way to be sure of the results of a second opinion," and one can have a mental illness and still be competent to stand trial. Leelu requests that her case be reversed and remanded for a second evaluation to determine the accuracy of the "initial determination" that Leelu was incompetent.

The Attorney General contends that, because Leelu has been restored to competency, any error the trial court may have committed in its competency determination "has no lingering consequences." The Attorney General does not address

_____

[4] On March 15, 2018, the trial court filed an order for transportation and placement and, on March 21, 2018, an order of commitment pursuant to section 1370, subdivision (a)(2).

[5] We grant the request for judicial notice.

5

Leelu's argument about custody credits. The Attorney General also argues that defense counsel's statement with respect to Leelu's objection "fell short of a statement that [Leelu] was not seeking a finding of mental incompetence" that would trigger the appointment of a second psychologist or psychiatrist. Finally, the Attorney General maintains that Leelu has not established prejudice under the standard set out in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) but provides no authority or argument why *Watson* supplies the appropriate standard of prejudice.

Leelu replies that *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) sets out the appropriate prejudice standard because the trial court's failure to appoint a second evaluator violated her due process rights under the Fourteenth Amendment to the United States Constitution. Leelu does not cite any authority for the application of the *Chapman* standard to error under section 1369, subdivision (a)(1).

## II. DISCUSSION

Turning first to the question of mootness, we agree that Leelu's potential custody credits continue to be affected by her commitment to DHS. (§ 4019; *People v. Sage* (1980) 26 Cal.3d 498, 502–503 ["[S]ection 4019 . . . does not authorize credit for time in such nonpenal institutions such as state hospitals."]; see also *People v. Waterman* (1986) 42 Cal.3d 565, 571, fn. 4 [finding no equal protection violation in the denial of "the limited work-and-conduct-credit system available to persons confined in jail prior to trial" to an individual serving "pretrial confinement for treatment of incompetence"].) Because Leelu's criminal proceedings are ongoing, the trial court may impose a jail term upon her. " 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' " (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231.) At sentencing, the court will be required to calculate her custody credits, which will be affected by her commitment to DSH. (§§ 2900.5, 4019.) Because our consideration of Leelu's appeal may have a "practical impact" in her case,

her appeal is not moot. (See *Stephon L.,* at p. 1231 [finding an appeal involving custody credit not moot].)

We now turn to the merits of Leelu's contention that the trial court erred in failing to appoint a second mental health evaluator. Section 1369(a) provides in relevant part "If the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall appoint two psychiatrists, licensed psychologists, or a combination thereof." (§ 1369, subd. (a)(1).) "The appointment of two experts in such circumstances provides a minimum protection for the defendant against being incorrectly found incompetent to stand trial." (*People v. Harris* (1993) 14 Cal.App.4th 984, 996 (*Harris*).)

Leelu's defense counsel "submit[ted] on the report" opining that Leelu was incompetent. However, Leelu's counsel also stated that she believed she had to "equate" Leelu's nonlinear statement upon being informed about the doctor's opinion of Leelu's incompetence to "an objection." Defense counsel specifically noted that she was "preserv[ing] Ms. Leelu's objection" to the finding in the report. Nevertheless, defense counsel did not object when the trial court found that Leelu was not competent without having appointed a second evaluator. The Attorney General argues "the court could reasonably conclude that [Leelu's] non-linear statement did not evidence a claim by [Leelu] that she believed she was competent to stand trial."

Under section 1369(a), either a defendant or her or his counsel must "expressly inform[] the court during the competency hearing that [the] defendant [is] not seeking a finding of incompetence" to trigger the requirement that the trial court appoint a second mental health expert. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 281.) Although Leelu's counsel did not request that the trial court appoint a second expert on Leelu's behalf, counsel did communicate Leelu's objection to the first evaluator's finding that she was incompetent. In addition to the objection communicated by defense counsel, Dr. Cohen's report noted that Leelu "strenuously denie[d] any present or past mental health symptoms

7

or treatment." On this record, it is difficult to conclude that Leelu herself was "seeking a finding of incompetence." (*Ibid*.) Nevertheless, to the extent that the trial court erred in not appointing a second mental health evaluator under section 1369(a), we conclude for the reasons set out below that Leelu suffered no prejudice.

The parties do not agree on the relevant standard. The Attorney General asserts, without any citation to supporting authority, that *Watson*, *supra*, 46 Cal.2d 818 provides the appropriate analysis. Leelu counters that the error should be reviewed under *Chapman*, *supra*, 386 U.S. 18 because she has a due process right "to be prosecuted in accordance with the state's rules" and a "liberty interest against arbitrary deprivation by the State." Leelu cites no case holding that the federal due process clause mandates section 1369(a)'s requirement that the trial court appoint a second mental health evaluator if the defendant asserts she is competent.

It is true that the statutory scheme of section 1368 et seq. "implements the due process guarantee not to be tried while mentally incompetent." (*People v. Lightsey* (2012) 54 Cal.4th 668, 705 (*Lightsey*).) Furthermore, some violations of the competency procedures, such as failing to appoint counsel for an incompetent defendant, can result in structural error requiring reversal, even under state law. (*Id*. at p. 699.) However, Leelu does not argue that the trial court's failure to appoint a second expert constitutes structural error, and she fails to explain why the federal due process clause mandates the aspect of the competency procedures at issue here.

The California Supreme Court has stated "[t]he federal Constitution requires the states to 'observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial.' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1391.) As the trial court found Leelu to be incompetent, her right " 'not to be tried or convicted while incompetent to stand trial' " was not threatened by the trial court's decision.

8

Other elements of section 1369 reflect statutory rather than constitutional rights. For example, "[t]he right to a jury determination of competency is statutory . . . not constitutional; thus, counsel may effectively waive it without a personal waiver from the defendant." (*People v. Lawley* (2002) 27 Cal.4th 102, 131.) We see no reason to apply a different analysis to the right at issue here. We conclude that section 1369(a)'s requirement that the trial court appoint a second mental health evaluator when the defendant contests competency is a function of state law—not federal constitutional command. To show prejudicial error justifying reversal, Leelu must "demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result." (*Lightsey*, *supra*, 54 Cal.4th at p. 699, citing *Watson*, *supra*, 46 Cal.2d at p. 836.)

We turn now to whether Leelu has carried her burden of showing prejudice. The requirement in section 1369(a) that two experts be appointed when the defendant or her counsel asserts she is competent "provides a minimum protection for the defendant against being incorrectly found incompetent to stand trial." (*Harris*, *supra*, 14 Cal.App.4th at p. 996.) The relevant question we confront is whether there is a reasonable probability that the trial court would have found Leelu competent to stand trial had the trial court appointed a second mental health expert.

"As a matter of due process, '[a] defendant may not be put to trial unless he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.' " ' " (*People v. Buenrostro* (2018) 6 Cal.5th 367, 386.) " 'The applicable state statutes essentially parallel the state and federal constitutional directives.' [Citation.] Section 1367, subdivision (a), provides in pertinent part: 'A person cannot be tried or adjudged to punishment . . . while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of

the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' " (*Ibid.*)

We see no evidence in the record to support a conclusion that appointment of a second mental health expert would have affected the trial court's finding that Leelu was not competent to stand trial. Leelu's comments reflected at her arraignment in docket C1779663 were so disjointed that the trial court immediately suspended criminal proceedings against her. The mental health expert appointed by the trial court related that Leelu "insists that her attorney is 'The Senior Minister of the Interior,' from Canada, and he would be defending her except he lost his Canadian driver's license, and must return home to get a replacement." When informed about the expert's opinion that she was incompetent to stand trial, Leelu had an outburst and had to be removed from the courtroom. Although Leelu's own attorney could not understand what Leelu was telling her, counsel felt she should object on Leelu's behalf to the expert's opinion that Leelu was incompetent. The report from the South Bay Conditional Release Program described "significant evidence that suggests [Leelu] is inappropriate for community outpatient treatment to reach trial competency" because she "is so severely decompensated that she would be unable to function and/or cooperate with any outpatient treatment."

After reviewing the record, we conclude it is not reasonably probable that Leelu would have been found competent had the trial court appointed a second mental health expert to evaluate her. We therefore affirm the trial court's order committing Leelu to the Department of State Hospitals.

### III. DISPOSITION

The March 8, 2018 order committing Leelu to the Department of State Hospitals is affirmed.

10

_____

Danner, J.

WE CONCUR:


_____

Elia, Acting P.J.



_____

Grover, J.

**H045703**
*People v. Leelu*

| Trial court: | Santa Clara County Superior Court<br>Case Nos.: B1795335, C1779663 |
|---|---|
| Trial judge: | Hon. Michele McKay McCoy |
| Attorney for Defendant and Appellant<br>CHARLETE LEELU: | Gordon B. Scott<br>under appointment by the Court of Appeal for Appellant |
| Attorneys for Plaintiff and Respondent<br>THE PEOPLE: | Xavier Becerra<br>Attorney General of California<br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br>Catherine A. Rivlin<br>Supervising Deputy Attorney General<br>Allan Yannow<br>Deputy Attorney General |

**H045703**
*People v. Leelu*